# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF INDIANA

**DaShawn Maurice Peterson, Plaintiff v. Destiny Alana Dexter, et al., Defendants**

Case No.: 2:25-cv-00432

## AMENDED COMPLAINT

### Parties

- **Plaintiff:** DaShawn Maurice Peterson (male), resident of Gary, Indiana (Lake County).
- **Defendants:**
  - **Destiny Alana Dexter** — female, early 20s, resident of Sun City Center, Florida (Hillsborough County). Known online under multiple Twitter/X accounts, including:
    - **@therealdtiny2** (successor to the suspended account **@therealdtiny**)
    - **@BtchRun**
  - **"Marajesty"** — an unidentified male, online alias associated with multiple Twitter accounts, including:
    - **@ItsMinajKingdom**
    - **@GasAtTheStation**
    - **@OnikasMarajesty**
    - **@FeelTheBass86** This John Doe Defendant is known to use a voice filter during live streams. Plaintiff possesses a voice recording of the Defendant's real voice, which will be submitted as an exhibit to corroborate identity.
  - **"LJ" (also known as Lui)** — an unidentified male, age approximately early to mid-20s, using online aliases and operating under the usernames:
    - **@prettibarblui**
    - **@ELLYONJAY** Identity remains unknown at this time.
  - **Kenndy Smith-Jackson (@TopnotchKenn, @minajsmuse)** — individual operating under this handle.

  - **Cookie** —unknown male individual operating under the usernames:
    - **@ONIKACOOKIE & @StanbaseX**

**Jurisdiction and Venue**

1. This Court has jurisdiction pursuant to **28 U.S.C. § 1331** because this action arises under federal law, including but not limited to **18 U.S.C. § 2261A (Interstate Stalking and Cyberstalking)** and **18 U.S.C. § 2252A (Child Sexual Exploitation and Obscenity)**.

2. This Court also has jurisdiction pursuant to **28 U.S.C. § 1332 (Diversity Jurisdiction)** because Plaintiff is a resident of Indiana and Defendants are residents of other states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to **28 U.S.C. § 1367**.

4. Venue is proper in the **Northern District of Indiana** under **28 U.S.C. § 1391(b)** because Plaintiff resides in Gary, Indiana (Lake County), and a substantial part of the events and harms giving rise to this action occurred within this District.

## Statement of Facts

- Beginning in January 2025, Defendants initiated a campaign of harassment and impersonation against Plaintiff.

- Between March and October 2025, the campaign escalated to include SMS harassment, false sexual assault allegations, impersonation of Plaintiff and his mother, swatting threats, CSAM framing, and amplification of defamatory claims.

- Defendants, including the newly added Doe Defendant **Cookie**, have engaged in a coordinated campaign of online impersonation and harassment. Cookie is known to operate under the usernames **@ONIKACOOKIE and @StanbaseX on Twitter/X**.

  Plaintiff alleges that Cookie disseminated defamatory statements, including false claims that Plaintiff himself engaged in harassment, and false claims that Plaintiff operated impersonation accounts used to spread CSAM-related content falsely attributed to Plaintiff. These actions were undertaken with actual malice and reckless disregard for Plaintiff's safety and reputation, causing severe emotional distress and reputational harm.

- Plaintiff further states that the true identity of Cookie, and other unidentified 'Doe Defendants' will be established through formal discovery and subpoenas.

## Statement of Facts

### January–March 2025 Hostile spaces and mischaracterization

During January through March 2025, Defendants, specifically a user identified as **John Doe "Marajesty,"** hosted multiple X/Twitter Spaces in which Plaintiff was repeatedly singled out, mocked, and characterized as "obsessive" and "dangerous." Those Spaces featured a sustained back-and-forth in **January** between Plaintiff and Marajesty during which Plaintiff, in the heat of the exchange, used language he now acknowledges was inappropriate and offensive; Plaintiff subsequently issued a public apology for those remarks. Despite Plaintiff's apology, **John Doe defendants and other defendants republished portions of certain unrecorded exchanges out of context to portray Plaintiff's conduct as more extreme and threatening than it was,** thereby priming audiences for subsequent false and defamatory allegations

### February 14–15 2025 - Humiliating threads and doxxing warning

- On February 14, Defendant Destiny Alana Dexter published a multi-tweet thread ridiculing Plaintiff, using humiliating language and imagery, and mocking Plaintiff's advocacy work and appearance; affiliated accounts amplified via quote-tweets and reposts.

- On February 15, Plaintiff received a direct message warning that his home address and family details were being prepared for public exposure, linked to John Doe Marajesty x/twitter space.

- This marked an escalation from public humiliation into targeted doxxing and intimidation.

### March 6, 2025 - Ableist space and SMS harassment

- John Doe Marajesty ,hosted a Space in which ableist slurs and insults were directed at Plaintiff.
- Harassing SMS messages referencing Space content arrived contemporaneously, indicating coordination.

### April–May 2025 Fabricated screenshots and TW SA post

Doctored screenshots and image panels circulated to falsely attribute statements and conduct to Plaintiff. A public post labeled "TW: SA"(posted by John Doe Marajesty )on one of his accounts (@onikasmarajesty) insinuated sexual assault without basis, exploiting the label to inflame followers and harm Plaintiff's reputation.

### May 3–5 2025 TW SA posting and amplification

A public item labeled "TW: SA" alleged sexual misconduct by Plaintiff on a anonymous account but had the same verbatim wording from when John Doe Marajesty )on one of his accounts (onikasmarajesty) posted it ; Defendant Kenndy Smith-Jackson replied and amplified the allegations.

### May 15–17 2025 Photograph pedophile label and Stationhead allegations

Dexter posted a photograph of Plaintiff and labeled Plaintiff a "pedophile." On May 17 at 8:57 PM CT, Dexter used screenshots from Plaintiff's Facebook post about a news story to further her defamatory narrative, falsely claiming Plaintiff impersonated social media accounts and made "disgusting" statements about a Dexter and a two-year-old child.

### May 2025 LJ defamatory post threats and amplification

John Doe Defendant LJ (a/k/a "Lui," **@PRETTIBARBLUI**) named Plaintiff's account among a "group of VIOLENT d0cksers," accusing those named of running impersonator pages and Stationhead accounts. LJ asserted that he and his associates "fed them fake tea and watched them use it," implying deliberate misinformation to entrap and smear Plaintiff. LJ threatened that if Plaintiff continued "violent threats, harassment, or trying to post [his] personal information," he would contact Plaintiff's school, journalists, and the police. Affiliated accounts amplified LJ's post and used it to justify impersonation, mass-reporting, and reputational sabotage.

"d0cksers" (proper spelling 'doxxers') - people who are Deliberately publishing someone's private identifying information online (address, phone, etc.) without consent, often to harass or intimidate.

### June 9 2025 Dexter accusations and Papa Bear reference

Dexter, posting from **@therealdtiny** at **11:08 PM CT**, accused Plaintiff and others of operating fake accounts, threatened to publish "screen recordings" and "documentation," and referenced **"Papa Bear"** while asserting criminal allegations. Defendant Destiny Alana Dexter amplified the defamatory narrative and related impersonations by labeling Plaintiff a **"pedophile"** and invoking **"Papa Bear,"** the public nickname for the minor child of a globally known female hip-hop musician who is the minor's maternal parent, to intensify outrage.

### June 9 2025 Impersonator @topnotchkennn and Jackson's public response

A fake account using Plaintiff's legal name with the handle **@topnotchkennn** (an impersonation account of Defendant Jackson) posted disturbing content and tagged Jackson. A direct message

from the impersonator included a photo of Plaintiff with Plaintiff's close female friend captioned: **"Going to fucking kill Shawn."** Jackson responded publicly from her verified handle to the fake page, stating she had screenshots and would take the matter to her local police department.

**Precautionary police contacts:** Because Defendant Kenndy Smith-Jackson publicly stated she would contact law enforcement in response to the impersonator account and invoked Plaintiff's name to make it look like it was Plaintiff, Plaintiff proactively contacted local law enforcement as a precaution on **November 25, 2025**.

A telephone inquiry to the Alpharetta Police Department at **9:23 AM CT / 10:23 AM ET** confirmed Plaintiff was **not** the subject of any open investigation; Plaintiff will obtain written confirmation from Alpharetta PD if needed. An online inquiry to the Fulton County Police Department elicited an email response from Elaine M. Smith, Executive Assistant to the Chief of Police, at **10:31 AM CT / 11:31 AM ET** confirming that Plaintiff has **no Fulton County Police Department reports** in the system; a copy of that email is preserved.

### July 25 2025 False swatting claim

Dexter publicly claimed she had "proof" of Plaintiff's wrongdoing regarding "swatting," falsely alleging Plaintiff swatted ex-defendant Mr. Camron (Cameron) Lee Wright. No evidence was produced; the claim fueled defamatory narratives.

For context: Swatting is maliciously reporting an emergency to get large response from law enforcement, where no emergency exists, often with a large police response.

### August 18, 2025, StanbaseX post deletion tactics and false swatting allegations

A post attributed to **@StanbaseX** (operated by John Doe Cookie) referenced Plaintiff by name and tagged **Max Torres-Maggio** (formerly **@airierthanmax**), who has filed a separate federal lawsuit alleging similar patterns of online defamation, impersonation, and harassment; overlapping defendants include Dexter and Kenndy Smith-Jackson. Repeated deletion and reposting obscured authorship and hindered moderation and reporting. Cookie and Dexter falsely claimed Plaintiff had "swatted" Mr. Wright.

In reality, Plaintiff made a legitimate local police report about the overall situation; Mr. Wright was identifiable at the time due to association with defendants, and the matter was properly transferred to the Hernando County, FL sheriff office. Only two officers visited Mr. Wright's home, not a SWAT or a large law enforcement response. (per Mr. Wright's communication with plaintiff) Defendants weaponized lawful police procedure into a false "swatting" narrative to criminalize Plaintiff's protective actions.

### September 6 2025 Explicit death threat targeting Plaintiff and his mother

Plaintiff received a death threat via text message sent from an anonymizing service to Plaintiff's unlisted Google Voice account, indicating an attempt to avoid attribution while reaching a private channel. The message contained direct threats against both Plaintiff and Plaintiff's mother, with references to the pseudonym Marajesty suggesting involvement or coordination. This marked a clear escalation from online defamation to real-world danger targeting Plaintiff and Plaintiff's family.

### October 20 2025 Impersonator infiltration CSAM-coded content urgent DM transcript

An impersonator account infiltrated a live x/twitter Space hosted by a well-known entertainment Blogger, posting graphic CSAM-related content under Plaintiff's likeness; the platform later suspended the account. Plaintiff received an urgent direct message warning of impersonator activity and promptly notified the host by their publicly listed email others to report the account to x.

### Similar litigation pattern(s)

*Torres-Maggio v. West (S.D. Fla. 2025)*

A separate federal action, **Torres-Maggio v. West**, No. 0:25-cv-61734 (S.D. Fla.), filed by **Max Torres-Maggio**, alleges defamation per se, civil conspiracy, intentional infliction of emotional distress, misuse of emergency services, false light, and public disclosure of private facts, naming some of the same individuals. The August 18 post directly referenced parties in that action, demonstrating overlap and awareness of the broader pattern.

### State case in Georgia — Tameer Peak v. Kenndy Smith-Jackson (Superior Court of Fulton County, Georgia)

- Case No. 24CV007682, filed June 18, 2024.
- Plaintiff notes this open Georgia case as further context evidencing similar dispute patterns and alleged misconduct connected to parties aligned with Defendants.

### IC3 reports (Cybercrime)

- Subject: Online impersonation, threats, and coordinated harassment.
- Status: Filed; reference numbers preserved
- Relevance: Supports federal awareness of interstate cyberstalking and threats.

### Local police reports (Indiana)

- Subject: Impersonation, threats, doxxing, and death threat.

- Status: Filed; incident numbers and officer contacts preserved.

- Relevance: Establishes contemporaneous reporting and harm within this District.

### Jurisdictional transfer (to Hernando County FL Sheriff office re: Mr. Wright)

- Subject: Procedural transfer of Plaintiff's report for jurisdiction; routine two-officer visit to Mr. Wright's residence.

- Status: Completed; documentation preserved.

- Relevance: Rebuts false "swatting" allegations and shows proper law enforcement handling.

## Legal Standard and Factual Relevance

**Insertion (reverse-lookup address):** Plaintiff's home address appeared on publicly accessible reverse-lookup websites prior to the incidents described herein. Defendants and affiliated accounts located and republished that information, however, not for any legitimate informational purpose but as part of a coordinated campaign to intimidate, harass, and doxx Plaintiff. Defendants used the publicly available address to threaten disclosure to third parties, to amplify false allegations, and to encourage others to target Plaintiff's residence and family; that malicious use materially increased Plaintiff's fear for personal safety and contributed to contemporaneous threats and inciting people to make law enforcement reports against Plaintiff.

### *Count I — Intentional Infliction of Emotional Distress (IIED)*

**Legal standard:** (1) extreme and outrageous conduct; (2) intent or reckless disregard to cause emotional distress; (3) causation; and (4) severe emotional distress. **Factual relevance:** Repeated death threats, impersonator DMs (e.g., "Going to fucking kill Shawn"), publication of CSAM-coded content, coordinated doxxing, and the insertion showing defendants located and maliciously republished Plaintiff's reverse-lookup address constitute extreme and outrageous conduct. The coordinated use of the address to threaten and incite law-enforcement reports demonstrates intent or reckless disregard, supports causation, and evidence severe emotional harm requiring police intervention and IC3 filings.

### *Count II — Public Disclosure of Private Facts*

**Legal standard:** (1) publicity to the public or a large group; (2) disclosure of a private fact; (3) the disclosure would be highly offensive to a reasonable person; and (4) the matter is not of legitimate public concern. **Factual relevance:** The insertion establishes that defendants located and republished Plaintiff's home address and used it maliciously to harass and endanger Plaintiff. Mass reposting, threats tied to the address, and efforts to incite third-party law-enforcement reports satisfy publicity and offensiveness and show the disclosure was not of legitimate public interest.

### *Count III — False Light*

**Legal standard:** (1) publicity; (2) the publicity places the plaintiff in a false and highly offensive light; and (3) the defendant acted with knowledge of or reckless disregard for the falsity. **Factual relevance:** Pairing the reverse-lookup address with false allegations (e.g., "pedophile," "swatting"), doctored screenshots, and coordinated amplification created a misleading and humiliating public impression. The insertion supports a finding that defendants knowingly or recklessly disseminated false implications and used the address to intensify public outrage and harm.

### *Count IV — Civil Conspiracy*

**Legal standard:** (1) an agreement between two or more persons to commit a tortious act or to accomplish a lawful act by unlawful means; (2) an overt act in furtherance of the agreement; and (3) damages resulting from the unlawful act.

**Factual relevance:** The insertion describes coordinated use of reverse-lookup data to intimidate and doxx Plaintiff. Synchronized postings, shared threats to contact third parties, republication of the address, and efforts to incite law-enforcement reports are overt acts in furtherance of a conspiratorial scheme that produced reputational and emotional damages tied to the underlying torts.

### *Count V — Defamation Per Se*

**Legal standard:** (1) a false and defamatory statement; (2) publication to a third party; (3) identification of the plaintiff; (4) fault (negligence or actual malice depending on plaintiff's status); and (5) per se categories (e.g., imputations of criminality or sexual misconduct) render special damages unnecessary. **Factual relevance:** The insertion shows defendants used the publicly available address to amplify and lend apparent credibility to per se defamatory accusations (e.g., labeling Plaintiff a "pedophile," alleging "swatting"). That malicious use of the address increased publication reaches and the likelihood of reputational harm, supporting falsity, publication, identification, and fault.

## Prayer for Relief

Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor on all claims and grant the following relief:

- **Compensatory damages** for reputational harm, emotional distress, and other losses.
- **Punitive damages** to deter similar future conduct.
- **Injunctive relief** restraining Defendants from further defamatory publications, impersonations, doxxing, and related online harassment.
- **Declaratory relief** that Defendants' conduct violated Plaintiff's rights and that Defendants are liable for the claims alleged.
- **Costs and attorneys' fees** and any other relief the Court deems just and proper.
- **Public apology**: an order requiring each Defendant who published, republished, or amplified the defamatory or harassing material to issue a written and public apology in a form approved by the Court. The apology shall:
  - **Retract** the specific false statements identified in the Complaint (including any statements labeling Plaintiff a "pedophile," alleging "swatting," or other criminal or sexual misconduct);
  - **Acknowledge** that the statements were false or misleading and that they caused reputational and emotional harm to Plaintiff.
  - **Be published** on the same platforms and accounts where the defamatory or harassing material was posted (including but not limited to X/Twitter, and any identified impersonator accounts), and remain publicly accessible for a period of not less than 180 days; and

  - **Be delivered** as a sworn statement filed on the public docket confirming the apology text, the dates and URLs of publication, and proof of continued accessibility. The Court may require monitoring and enforcement mechanisms, including contempt sanctions, to ensure compliance.

## Referral of Potential Criminal Activity

Plaintiff further requests that the Court refer any evidence of potential criminal activity uncovered in discovery or otherwise developed in this action to appropriate prosecutorial or law-enforcement authorities for investigation and prosecution. Potential criminal activity includes, but is not limited to:

- **Threats and extortion** including death threats and threats to family members.
- **Doxxing and unlawful dissemination of private information** intended to intimidate or harass.
- **Impersonation and identity-theft offenses** involving creation and use of fake accounts to post threatening or illicit content.
- **Cyberstalking and coordinated online harassment** across multiple accounts and platforms.

- **Transmission or distribution of CSAM-coded or otherwise illicit sexual content** and related offenses.
- **Conspiracy to commit any of the foregoing offenses** or other federal or state crimes revealed by the record.

**Requested referrals:** Plaintiff requests referral of such matters to the **United States Attorney's Office for the Northern District of Indiana Hammond Division**, the **Federal Bureau of Investigation**, the **Internet Crime Complaint Center (IC3)**, and to any relevant state or local prosecutors and law-enforcement agencies with jurisdiction over identified incidents.

Respectfully Submitted

*DaShawn Peterson*

DaShawn M. Peterson
Pro se
Gary, IN
Email: dpeterson331@hotmail.com
Phone: 2192328489
Date: December 10, 2025